This case number 416-0157, The People of the State of Illinois v. Ellis Drake. Drake-Ellis. Drake-Ellis, sorry. And for the appellate we have Ms. Bissell, is that correct? And then Ms. Brooks for the appellate. You may proceed, counsel. Good morning, Your Honors. Therese Bissell from the Office of the State Appellate Defender for Mr. Drake-Ellis. May it please the Court. Mr. Ellis, first of all, I'm going to focus on the first two arguments, the necessity argument and the second one dealing with hearsay. If Your Honors have questions about the third argument as well, I'm willing to answer those. Mr. Ellis found bullets in an alley and picked them up because he did not want to just leave the bullets there for any children or for anyone to find them and to do bad things with them. He had no gun on him, and he reasonably believed that by picking up the bullets, he was preventing greater injury. The State at trial failed to prove beyond a reasonable doubt that the affirmative defense of necessity did not apply to Mr. Ellis. And it was the State's burden, and it did not disprove necessity beyond a reasonable doubt. This is a jury trial. Yes, it is. Tough burden. There is, and there is deference to the jury's finding of guilt, yes. But the jury's decision is not completely absolute. Your Honors, you know, do have a duty to examine the evidence. And it was the State's burden here at trial to prove that necessity did not apply here. Well, let me ask you. I think I've got the name right. Blackburn, is that Blackburn's friend or girlfriend? I believe it was his girlfriend, fiancee, I believe it was. She's standing next to me in the alley. Why didn't I tell her to pick them up? There's a potential violation because she doesn't have a FOIA card, assuming she doesn't. But she doesn't, unless she's an ex-felon or a felon, I don't know. But let's assume for the moment she's not or that that's not in the record. How can it be a necessity if there's another person available to pick them up and take them to the fire department? Well, her testimony was that she had told him not to pick them up. Right. So I believe that it was his belief then that that wasn't an option to give it to her. And he believed... Is that a reasonable belief? Well, if there's no one else for him to give it to... Well, her telling him not to pick them up isn't an indication that she wouldn't if he says, you know, I've been in enough trouble, I better not pick them up. That's true. But it's his reasonable belief. And he testified that he believed that he didn't want to just leave them there in the alley, that he had seen things done, you know, two bullets, he lost a cousin to gun violence, things like that. So he had some personal, you know, experiences where people had, you know, and heard about things, you know, people doing bad things with bullets. But what if the jury rejected that? His testimony? Yes. What if they believed he had the bullets at home, they were on his person, he'd had them the whole time, and he made up the story about even seeing them in the alley? Well, his testimony made sense here. I mean, he just has bullets in his pocket. There's no gun. Again, there's no gun, so there's no harm in him actually, you know, picking up the bullets. He believed that it was necessary for him to do so to protect a greater, you know, a greater harm here. And Ms. Blackburn did corroborate his testimony. You know, it is kind of odd that he just has bullets in his pocket. And she did tell him, you know, there was that testimony that she told him not to pick them up. So if they were making up some sort of story, I don't know if it would really make a lot of sense for her to, you know, testify that she told him not to pick them up. But so it's not a situation where, you know, she seems to be making up some type of story, talking about how he acted perfectly, you know, and things like that. And he had a reasonable belief here that he needed to pick up the bullets in order to prevent a greater harm. What was the greater harm he was preventing? Just leaving the bullets there. Okay, the bullets are left there. What's the greater harm he's preventing? There's a threat that someone, you know, like he testified to, he had known people, you know, to do bad things with just the bullets. If you just leave the bullets there, his harm in actually picking up the bullets, where he doesn't have a gun, so he can do no harm with the bullets. Well, that's not the focus. The focus is what's the greater harm he's preventing? Just leaving the bullets there for anyone. Well, I mean, that's, if he leaves the bullets there, give me a scenario on what bad things are going to occur. Well, it is odd that there's just six bullets laying in the alley. It's possible that someone, it's speculation, but someone could have left them there, you know, intending to come back and use the gun. And? And use the gun. So someone has unloaded the gun, left the bullets there, might come back, load the gun, and do something bad. That's a possibility. And also just children or anyone finding bullets in the alley. Okay, so some kid finds the bullets. What's the greater harm that's going to occur? That he could, like Mr. Ellis testified to, that he had seen things, you know, he could do, for lack of a better term, stupid things with, you know, that he had seen kids do with bullets, you know, throw them into a fire, throw cinder blocks on them. And those are the examples that he provided that he had past experiences with. So again, he doesn't have a gun. So he has no firearm. There's no evidence at all that, you know, he has a gun or anything. So his harm, there's no harm in him. He's not posing a threat by possessing the bullets. He can do no injury because he doesn't have a gun with the bullets. But if he just left them there on the ground, then they are a threat and possibility that someone could do something bad with the bullets. So in this state had to prove beyond a reasonable doubt that the harm of him carrying bullets without a firearm was more than the harm of him leaving the bullets where anyone could get to them. No, that's not the issue. That's not the issue that there's greater harm. He's a convicted felon. He can't have the bullets. That is true. So the defense of necessity means he had to commit this crime so as to avoid some greater harm. Yes. And the greater harm of just leaving the bullets there where anyone with a gun, without a gun, could find them and do something with them. But he ends up having them in his pocket while he goes to the meat market and then stops off at Walgreens or wants to go into Walgreens. I think that was his intention. And then he intends to go home. Isn't a fact finder, the jury, entitled to infer that he either intended to keep them or that his view of necessity was kind of casual in the sense that even though I know that I shouldn't have ammunition, I'm not going to get rid of it as quickly as possible. I'm just going to go about the daily affairs of life as opposed to seeking some reasonable alternative to carrying them in my pocket. If you were a juror, we're not supposed to place ourselves in the place of jurors or ask jurors to place themselves in our place. But I think you can understand that a reasonable juror could infer that. A couple of points there. First of all, the situation at the time that he was in with his girlfriend and their four-year-old daughter who had just woken up from a nap and was hungry. And that was the whole point of them was to go and get food for the young girl so that they could have dinner because she was hungry. So that situation, they were focused on getting food. And I know as having young children, when you have a four-year-old who just woke up from a nap and trying to get some food, that was their focus at the time. They happened to walk through the alley, find the bullets. But his focus was on getting the food. And there's nothing in the language of the necessity statute that says he must turn the bullets in immediately. And there's nothing in there that says he has to act perfectly. Yes, there was. You know, could he have maybe just thrown them away, dropped them off before they got there? This instance of the possession is a continuing offense. It's not as if he struck someone because it was necessary to prevent them from striking somebody else. You know, it's both self-defense and necessity. This is continuing. Well, my focus again is that this is a relatively short time period. True. You know, we're not talking hours or anything like that. You know, it's just, I think it's a half mile from his house to where he was arrested, and they found the bullets about halfway in between there. So, I mean, probably, you know, just a matter of minutes that he possessed the bullets. And there's no proof that he was not going to turn them in. I think his focus at that time was to get food. And then he got into whatever happened at the meat market, and then he was arrested. So there's no, that is the key, is that the state, there's no proof that he would not have turned them in, say, after getting food and on their way back home. There was evidence that there was a fire station nearby. So that, the burden is on the state to prove beyond a reasonable doubt that he would not have turned them in. And here he did testify that he was going to turn them in, but he just essentially did not get the opportunity to because he was arrested. So there's nothing in the statute that says he must do so immediately. But again, it was all in a relatively short time period. Nothing to prove that he would not have turned them in. If Your Honors have no further questions on that argument, I'd like to proceed to the second argument. The state's sole witness, Detective Atkinson, testified that he heard a radio call sending units to the meat market because a subject was threatening an employee with a knife, and he then assisted in arresting Mr. Ellis. The testimony, especially the testimony about the knife, was an admissible hearsay. This case was tried in Macon County? Yes, it was. Who was the defense counsel? It's a public defender. I don't have his name. You don't recall? Which one? I don't have. Sorry, I don't have that on the top of my head, Your Honor. The trial counsel was ineffective for failing to object to the hearsay. The key here is that the officer gave the statement about a knife, and that was so prejudicial to Mr. Ellis and does not help his defense at all. And the information about the knife not only hurts Mr. Ellis' credibility, where it was really only his testimony against the police officers. His testimony was so crucial to the defense of necessity. So this statement about there being a prior altercation where he was threatening someone with a knife, specifically the knife, not only hurt his credibility, but it affects how the jury assessed the necessity defense. It affects how the jury saw Mr. Ellis. Do they see him as a violent person who is likely to possess weapons or ammunition? Or do they see him as someone who, you know, as he testified to, he picked them up because he didn't want anyone else getting them? Did the state rely on this evidence in any other way? I mean, did they mention an opening or closing or anything like that? No, it was not used. No, it was not used. Okay. Yeah. It was not used. But, again, the mention of the knife, it was just so prejudicial here to Mr. Ellis, and it really affects his, the necessity defense. Counsel, there was only the one witness in this case, the police officer? Yes. Does the record contain the discovery information that was provided to the defense? No, it does not, Your Honor. So you don't know if the one police officer filled out a police report pertaining to this matter? I do not have any police reports. I know there was an arrest report. Was that in the record? I believe there was something in the record that has an arrest report. My question is, was there anything in the record containing this dispatch report? I don't believe so. The actual dispatch? No. So do we know whether or not the defense counsel was told in advance of Atkinson's testimony that dispatch sent patrol units to the Tennessee meat market because the subject inside the store was apparently threatening an employee with a knife? No, we do not. So it's possible that's the first time this arose? It's possible. Yes, we do not know that. And there was no objection or statement made by defense counsel to it? No, there was not. I would argue that Your Honor should really focus on the recent case of people versus bowling, where this court emphasized the importance of balancing the need for an officer's testimony in this type of situation, including details about the radio call. And the need here, there is no need to mention the knife because the knife was not involved. This is not a case about, you know, a knife or about what happened in the market. All the jury needs to know is that Mr. Ellis was arrested and he was found with bullets in his pocket. The charge in this case was unlawful use of weapons by a fellow? Yes. Yes, with ammunition. And when Officer Atkins testified, he testified to the search incident to arrest him. Yes. That's how he found the bullets, right? Yes. Was there any mention of finding a knife? No. No, there was not, Your Honor. What was the defendant arrested for in which the bullets were discovered? I believe initially there was an arrest for possibly like an aggravated assault and then the UUW by a felon, but the UUW by a felon was the only charge that he was charged with. Well, that gets him and goes to the Tennessee meat market. What happens? He sees Mr. Ellis coming out, I believe crossing the street, and he testified that he matched the description from the radio call, and then he went and assisted, I believe there was a few other units as well, and Defective Atkinson assisted in arresting Mr. Ellis and then did the search and found the bullets in his pocket. So again, balancing the need for the officer's statement, there really is no need to mention the details about the radio call, especially the knife. But the potential prejudice here, it's very prejudicial because it affects, again, like I said, it affects how the jury views Mr. Ellis, not only his credibility, but if the jury heard about him threatening an employee with a knife, they're likely to see him as a violent person and the type of person who would carry weapons or ammunition. And that was the necessity of defense in this case was that was his defense. So the potential prejudice here is great. Do you have any other further questions? Well, I'm just curious, assuming a discussion had occurred prior to Atkinson's testimony where defense counsel expressed concern that the jury would be told too much that was unnecessary and potentially prejudicial to the defendant. Defense counsel raises this. What do you think Atkinson should have been permitted to testify to explain to the jury why he arrested the defendant? Well, he is allowed to explain why he was there, and I think it's plenty. Tell me. Sure. Okay, this is Judge Bissell hearing all of it and says, okay, well, I'm going to determine that Officer Atkinson may state the following. I think it would have been more than sufficient to let him say that, you know, he was dispatched to the market because the subject was threatening an employee and leave off the – but even that, I mean, I think under bowling, I think it's sufficient to say that units were dispatched to the market because there was an altercation or a disturbance. How about on an unrelated matter? That could be something like that, yes. You know, the key here is the knife, and the threatening of the employee is also pretty prejudicial as well. But I think the really – the specific dimension of the knife here was particularly prejudicial here. I think it would have been more than sufficient to say that there was a radio call about a disturbance or an altercation or something, something to that effect at the market where he then responded. That additional information about the knife was very prejudicial to Mr. Ellis and the necessity defense. Are there any further questions, Your Honor? I don't see any at this time, Counsel. Thank you, Your Honor. Thank you. Ms. Brooks? Yes. Thank you, Your Honors. May it please the Court, my name is Allison Paige Brooks, and I appear on behalf of the people. With respect to the necessity defense, I'm not sure if the defense is quite clear about the nature of its argument. But what the State perceives is in line of sort of similar cases that happened in the past, where the argument is that the defense testimony was uncontradicted and therefore must be accepted as true by the trial of fact, such that the affirmative defense must be accepted by the Court as a matter of law. And that is sort of what the State perceives the defense position to be here, that the defense believes this is a rare case where the defense testimony must be accepted as true and there is no credibility question to even be reached. In other words, it seems what the defense is sort of saying is that the jury verdict should have been directed. I know they're not specifically saying that, but the ordinary sufficiency of evidence argument is that the juror's verdict was unreasonable or that the evidence was too unsatisfactory. But then again, appellate courts almost most commonly affirm jury verdicts because the fact that the evidence was conflicting, for example, is not a sufficient reason to reverse the jury's verdict because the appellate courts are going to defer to the juror's assessments of witness credibility. So I can't really understand whether the defense is sort of saying that this Court shouldn't even reach the credibility question and if the defense position is that the affirmative defense was established as a matter of law, sort of like the Golan's case they rely on, where in that case it was uncontradicted even by circumstances. And that's what gets important under the Warren case where, I mean, even the situation here where the defense argument today is admitted that it is odd that someone would find six bullets lying on the ground in an alley. Well, that's a circumstance that can be considered by a trial of fact. It's determining whether defense testimony is true. I mean, it's just one of the circumstances. And then when they're picked up and he says, well, they don't have a phone to call the police, but then they walk right by the fire station. Again, a very important circumstance that a juror can say that they believe that the defense testimony in this case does the record show that they walked by the fire station or that the fire station was nearby? A defendant admitted it was by the Tennessee meat market. I'm not sure if the record exactly specifically says whether they walked exactly past it. The defendant did admit, if I want to clarify my argument, that he did admit that the fire station was by the Tennessee meat market where she went into. So he also said he was going to go back home after he left the Tennessee meat market. So he was going to essentially leave the area of a place where he could have deposited the bullets with a public safety official. I mean, it's an alternative that he decided not to take. And that thereby makes his credibility and the credibility of his witness, Amber Blackburn, in question. The juror then can make a reasonable decision as to whether or not to believe or disbelieve. And if the jurors reasonably disbelieve the defense testimony of an affirmative defense, like self-defense in another situation, if you have two people, somebody dies, and one person says, well, he threatened me with a gun, I had to shoot him, and there's no other witnesses, the jurors can decide whether to believe or disbelieve that. And if the jurors disbelieve it... Does it make it easier for the jurors to disbelieve him if they think he's the kind of guy that would threaten an employee of a grocery store or a meat market with a knife? Generally, the prejudice for that is, for other crimes evidence, is whether the jurors might somehow seek to punish the defendant for the other crime. Except this is immediate conduct, it's not, he's been a bad guy in the past, it's, he's the kind of person that would threaten somebody with a knife at the same time that he's got bullets in his pocket, at the same time that he's a convicted felon. Does it make it easier for them to disregard his story because they heard about the police dispatch? I mean, it goes to his credibility. Right, it is a fair question. He's violent, he's dangerous, he's threatening an employee with a knife and bullets in his pocket. Right, but it is not like... I like that you admitted it was a fair question. No, no, no, no, it does go to credibility in some way, but it is unlike the juror case which they rely on. In juror, the hearsay reports were that a man was with a gun, and the defendant juror was, did that description. And it was relevant in that case because the defendant juror denied having a gun and there was no physical evidence, and the police saw him with a gun, so there's a question of credibility as to whether juror had a gun. So the information before the jurors that juror, the person fitting his description, had a gun directly corroborated the... The juror was even worse than what occurred here. Very worse. I mean, that's the idea. In this situation, the defendant does have a burden on Strickland of proving prejudice. And... Well, let me ask, going back to the question raised earlier, was there any discovery about this? Was defense counsel blindsided by this testimony? I'm not aware of it because, I mean, there could have been, like, a Cameron hearing or a motion to eliminate, and this would have been decided whether it was necessary. Of course. Well, you see, you've been doing this for a number of years, Ms. Brooks, and you really do an excellent job. And you just revealed what a star you are because you used the magic terms, a Cameron hearing, which makes you one of about maybe six, maybe generous, prosecutors in the whole state to understand the concept of how this should really work. Right. And I suppose, you know, that was 29 years ago that this court, which has been kind of the leader in beating this drum, wrote Cameron and what should be done. I've been involved in several of those cases, and I keep searching records to see if any prosecutor, indeed any lawyer or judge, would ever say, you know, judge, we need a Cameron hearing in this to decide the scope and extent and necessity of these statements. And this is really pretty bad here, and I'm wondering, will we ever get anything changed unless we start reversing convictions? And given, you know, based on a lot of experience, this seems as simple a case as there could possibly be. We have one witness, the cop. Maybe we should reverse the remand and say, by the way, when you go back there, you know, that this is about the knife, just leave it out. And say there was an argument or altercation or a problem at the store, or even threats made, because you want to explain to the jury why Edgerton made the arrest, and go back and do that and, you know, reiterate what we said in all these cases. O'Toole, Cameron, testimony about the steps of investigation, did not include the substance of conversation with a non-testifying witness. Bowling, I mean, the good news is you know them all, Ms. Brooks. But as I say, you know them, but we don't see anyone applying them. And I'm just wondering, at what point should we, and maybe this would be a good case to say, since, you know, we're not talking about an involved murder case requiring some 8-year-old female victim to have to testify again about some awful events. How about this is a pretty easy case, say, no, you know, we've had enough of this, and maybe we can get the message out to prosecutors to stop it. And, by the way, trial judges who aren't, what's the phrase, the potted plant in the courtroom. Well, this court could publish the opinion and very strongly word a warning as to future cases, but this case is not the one. Well, obviously, this setting aside first-pronged strickland in the beach and whether the record is adequate, because here there's only one reference, unlike Jura, which was multiple references. So there is a possible idea here that the defense counsel might not want to highlight this evidence by objecting. And also, the fed strategy, there is a conceivable strategy here. And this is why the major reason why this is not the appropriate case to reverse on this particular issue is because this is a defendant who the police order to the ground, handcuff, then ask him whether he has any contraband on his person, and he said, oh, I have six bullets in my pocket. So, in other words, the circumstances of the arrest are crucial here. Vis-a-vis, the defense is not contesting he has the bullets. So the question is whether he has a necessity defense. And the question, one of the most important powerful facts here is the defendant doesn't even mention the bullets to the police even until he is asked whether he has any contraband on his person, and they are getting ready to search him. Justice Connick pointed out that this might be different if it were a burglary case. This is a lawful use of weapons case by a felon, and the improper evidence is involving a dangerous weapon. Well, that the jury shouldn't have heard anything about that they are going to think is not just this guy's history, but contemporaneously within minutes. Right. He had this dangerous weapon. Now, he didn't find the weapon, the knife on him, but he could have gotten rid of that easily enough and forget about the bullets. But, you know, this is very troubling stuff. Well, the standard here would be, I mean, because this is not hearsay, because it's not amended to prove the truth of the matter asserted. The only question is whether the danger of unfair prejudice of which connecting a knife and this would have some danger of unfair prejudice, whether that would substantially outweigh the proper purpose of this evidence coming in,  And the necessity of explaining the author's actions is ordering him to the ground and handcuffing him right away and going right to the search to try to find the knife. So, essentially, it is very crucial in this case for the defense or for the juror to know that this subject was a suspect in an altercation involving a weapon. That is very relevant for the jurors to know that because then they understand why they're caught. An altercation, maybe not with a weapon, but an altercation at a minimum. Some sort of altercation with a weapon because the police are treating him as if he is armed. By ordering him to the ground... Well, if I want to be, you know, watching TV shows, if you're ever arresting someone, whether you know he has a weapon or not, police have to be careful that he might have a weapon. And if the report were an argument and threats at, physical threats at the grocery store, and the police, and here's the guy, they're going to arrest him, there's no need to explain why they searched him to see if he had weapons. I think it's common expectation is they're always going to search him to see if he's got a weapon. Right. But the crucial part of this case is the defense's argument that he was unable to turn in these bullets because he was arrested by the police. So the circumstances and the method of execution of that arrest and the reason why the police effectuated this stop and arrest in the manner they did becomes crucial. All that is true and has nothing to do with the fact he might be a guy who presented a knife at the grocery store according to the police dispatch. Had that not been included, all the points you made would be just as valid and there would be no need for that knife reference. Right. But my point is if this had gone to a Cameron hearing, the prosecutors made this very strong argument that it is necessary for the police to explain why they treated him like an armed suspect. No, I don't think that's necessary at all. Officer, do you always, when you make an arrest, search and deal with someone as if they might be armed? Yes. Okay. Next case. The timing is important, the sequence and timing of ordering him on the ground, handcuffing him right away because the defense claim is I was prevented from turning these bullets into authorities and here's an authority who approaches the defendant and he's not like, oh, your officer, I have these bullets in my pocket, I want to turn in. That's not the first thing he does. It is only when a physical search is immediately imminent does he then say, officer, I have bullets in my pocket. And that is why this is the oddball case that would make this not appropriate to sort of make this statement reversal on the Cameron issue. Question. Yes. Did the jury know that the officer did not find a knife? I'm not sure if the answer to that. I know they were not also, the one bad, other bad fact is, well, they haven't, weren't instructed to sort of disregard the sort of like or limiting instruction in terms of the altercation as being not relevant or something. They weren't given a limiting instruction on this. I mean, so there are some, it's not a perfect case, but I think the major issue here is also the Strickland first prong. There is some conceivable strategic issue here for the defense to capitalize on the timing and manner of how the arrest was effectuated and why he was stopped the way he was, which prevented him from turning the bullets in. I mean, so there is some conceivable strategic value here. And it's not like the juror case where there was absolutely no strategic value to letting multiple officers come in and use an opening statement and closing argument. And that was totally let in without any objection. And that was an appropriate reversal in juror even because it was obvious that there was ineffective assistance and unreasonable representation. Here it's not clear from the record that this defense counsel acted unprofessionally by not objecting. That's not obvious from the record. And this is the type of case that should be explored if this court believes it is prejudicial because obviously this court can affirm on the ground of insufficient prejudice and should do so. But if this court believed that this was prejudicial, it should then be let this be developed, the first prong be developed on post-conviction. So it would not be appropriate to reverse this on ineffective assistance of counsel grounds. So that's the extent of the state's prepared argument. Are there any other questions? I don't see any at this time. Thank you, counsel. Any rebuttal on behalf of Mr. Ellis? Thank you, Your Honors. Just a few points to make. As far as strategy, there is no reasonable strategy here by defense counsel to let in information about a knife because that statement about a knife is just so prejudicial to Mr. Ellis, as I discussed earlier, because it affects his whole testimony in the necessity defense. So any mention of a knife, to not object to that and at least try to limit that in some way, that was unreasonable. No trial strategy there. As far as his arrest in Detective Atkinson, Detective Atkinson did testify as to the arrest. And he did actually say that when he, that he did a pat-down search and, you know, to search for any weapons. And that's something, and he testified that that is something that is done to everyone that's taken under arrest. And he didn't make any mention of locating a knife. He did not. No, no. And he did say, and all, excuse me, Your Honor, he asked defendant if he had anything on his person. And that's when defendant did say that, yes, he had these bullets in his pocket. And again, the knife is just not relevant at all here. And it is so prejudicial to Mr. Ellis and his necessity defense. And I also just wanted to make one, an answer to where the fire department was as far as the first question. And just to, as a reminder, they were in an alley. So it's not really clear where exactly the fire department, I know it was close by. But again, they were in the alley, so kind of behind stores and things like that. So just something to keep in mind as well. Any other further questions, Your Honor? I don't see any. Thank you, counsel. Thank you, Your Honor. This matter will be taken under advisement. We'll be in recess.